AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
XIAODONG HE

Defendant(s)

Case No. 6:26-mj- 1933

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 25, 2026 in the county of Brevard in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 49 U.S.C. § 46307 | Violation of National Defense Airspace. |
| 49 U.S.C. § 46306(b)(7) | Operating aircraft without an airman's certificate. |

This criminal complaint is based on these facts:

See affidavit.

☑ Continued on the attached sheet.

CMBeers

*Complainant's signature*

Christine Beers, SA, NASA-OIG

*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: 8/7/26

Leslie Hoffman Price

*Judge's signature*

City and state: Orlando, Florida

Hon. Leslie Hoffman Price, U.S. Magistrate Judge

*Printed name and title*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v. Case No. 6:26-mj-1933

XIAODONG HE

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Christine Beers, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the National Aeronautics and Space Administration (NASA), Office of Inspector General (OIG), Office of Investigations (OI), Kennedy Space Center (KSC), Florida, and have been employed with NASA OIG since March 11, 2024. NASA OIG is a federal law enforcement agency that investigates allegations of crime, cyber-crime, fraud, waste, abuse, and misconduct having impact on NASA programs, projects, operations, and resources. Prior to becoming a Special Agent with NASA OIG, I was employed as a Special Agent with the Internal Revenue Service, Criminal Investigation (IRS CI) for six years and seven months. As a Special Agent, I have conducted criminal, civil and administrative investigations, including in the areas of fraud, waste and abuse of NASA Programs and general crimes that have occurred on NASA federal property. I am an investigator and federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). I am empowered by law to conduct

investigations, to execute search warrants, and to make arrests for offenses of Federal law, including the Subject Offenses.

2. This affidavit is submitted in support of an application for the issuance of a warrant for the arrest of XIAODONG HE (HE) for violations of 49 U.S.C. § 46307 (violation of National Defense Airspace) and 49 U.S.C. § 46306(b)(7) (operating aircraft without an airman's certificate). These offenses relate to HE's operation of a DJI MAVIC 4 PRO with ID Serial number 1581F986C25580021DLZ ("Subject UAS") over NASA's Kennedy Space Center, Space Commerce Way, Merritt Island, FL 32953, on or about July 25, 2026.

3. The facts in this affidavit come from my participation in this investigation and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant to arrest HE and does not set forth all of my knowledge about this matter.

## LEGAL BACKGROUND

4. The Federal Aviation Administration ("FAA") is an agency within the United States Department of Transportation responsible for the control and use of navigable airspace within the United States. The FAA created the National Airspace System ("NAS") to protect persons and property on the ground, and to establish a safe and efficient airspace environment for civil, commercial, and military aviation. In the FAA Modernization and Reform Act of 2012, the FAA was charged with

safely integrating unmanned aircraft systems ("UAS"), commonly referred to as "drones," into the NAS.

5. Pursuant to 49 U.S.C. § 40103(b)(3), the FAA has designated the airspace in Kennedy Space Center as "National Defense Airspace" and a restricted airspace, classified as zone R-2932. All unmanned aircraft are prohibited from flying within restricted area without approval from NASA and the FAA.

*Federal Aviation Administration Requirements*

6. 14 C.F.R. § 107 provides requirements for the operation of small Unmanned Aircraft Systems. Specifically, 14 C.F.R. § 107.12 provides requirements for a remote pilot certificate with a small UAS rating and states that:

(a) except as provided in paragraph (c) of this section, no person may manipulate the flight controls of a small, unmanned aircraft system unless:

> (1) that person has a remote pilot certificate with a small UAS rating issued pursuant to subpart C of this part and satisfies the requirements of 107.65; or
>
> (2) that person is under the direct supervision of a remote pilot in command and the remote pilot in command has the ability to immediately take direct control of the flight of the small, unmanned aircraft.

(b) except as provided in paragraph (c) of this section, no person may act as a remote pilot in command unless that person has a remote pilot certificate with a small UAS rating pursuant to Subpart C of this part and satisfies the requirements of

107.65; and

(c) the Administrator may, consistent with international standards, authorize an airman to operate a civil foreign-registered small, unmanned aircraft without an FAA-issued remote pilot certificate with a small UAS rating.

7. 14 C.F.R. § 107.3 provides definitions related to small, unmanned aircraft. Specifically, 14 C.F.R. § 107.3 states that "control station means an interface used by the remote pilot to control the flight path of the small unmanned aircraft…; "small unmanned aircraft" means an unmanned aircraft weighing less than 55 pounds on takeoff, including everything that is on board or otherwise attached to the aircraft; "small unmanned aircraft system" ("small UAS") means a small unmanned aircraft and its associated elements (including communication links and the components that control the small unmanned aircraft) that are required for the safe and efficient operation of the small unmanned aircraft in the national airspace system; and "unmanned aircraft" means an aircraft operated without the possibility of direct human intervention from within or on the aircraft."

*UAS Registration Requirement and Operation Rules*

8. As of December 12, 2017, 49 U.S.C. § 46306 criminalized the operation of unregistered unmanned aircraft. Public Law 115-91, Section 1092(d) specifically restored the rules adopted by the Administrator of the Federal Aviation Administration for small, unmanned aircraft (FAA-2015-7396). The term aircraft used in Title 49 is defined as any contrivance invented, used, or designed to navigate

or fly in the air (49 U.S.C. § 40102(a)(6). An unmanned aircraft weighing between 0.55 pounds and 55 pounds must be registered pursuant to 14 C.F.R. § 107. This applies to such devices even if such devices are used purely for hobby or recreational purposes. 49 U.S.C. § 46306(b)(7) makes it a crime for an individual to knowingly and willfully serve or attempt to serve in any capacity as an airman without an airman's certificate authorizing the individual to serve in that capacity. Anyone who operates the unmanned aircraft for commercial purposes must also possess a valid Remote Pilot Airman's Certificate.

*Violation of Regulations of National Aeronautics and Space Administration*

9. 14 C.F.R. § 1203a provides criminal penalties for violation of security areas at National Aeronautics and Space Administration Centers or Component Facilities. 14 C.F.R. § 1203a.104(b) subjects prosecution under 18 U.S.C. § 799 which makes it a crime to willfully "violate, attempt to violate, or conspire to violate any regulation or order promulgated by the Administrator of the National Aeronautics and Space Administration for the protection or security of any laboratory, station, base or other facility, or part thereof, or any aircraft, missile, spacecraft, or similar vehicle, or part thereof, or other property or equipment in the custody of the Administration, or any real or personal property or equipment in the custody of any contractor under any contract with the Administration or any subcontractor of any such contractor, shall be fined under this title, or imprisoned not more than a year, or both." As such, NASA controls access to its facilities, which

includes the Kennedy Space Center (KSC) in Merritt Island, FL, to only those NASA employees, NASA contractor employees, and visitors who have a need for such access and are authorized to enter the area alone or be escorted by or under the supervision of a NASA employee or NASA contractor employee who is authorized to enter the area. NASA limits and controls access to its facilities through physical fencing and armed security personnel, or automatic gates that utilize biometric or electronic identification badges and provides notification to the public through signage that it is a federal facility. Additional signage at KSC states "under 24-hour surveillance" and prohibits drones.

*Signs prohibiting UAS or Drones on Kennedy Space Center Property*






*Eastbound on Titusville Road heading towards Bio Lab Road Playalinda Beach and Gate 4.*




*Eastbound on West NASA Causeway heading towards KSC and Gate 3*




*Northbound on North Courtenay Parkway heading towards KSC and Gate 2*




*Southbound on Courtenay Parkway North heading towards Bio Lab Road Playalinda Beach and Gate 4.*

## PROBABLE CAUSE

10. On July 25, 2026, Kennedy Space Center Security Police (KSC Police) responded to a drone notification in reference to unauthorized airspace activity, arriving at the area of Playalinda Beach. Updated dispatch information led KSC Police to Playalinda Beach, Vista #8. The National Park Service had also reported to the scene prior to KSC Police. Upon reaching the parking lot, KSC Police observed a drone descending and then a male, later identified as HE, operating the drone in R-2932.

11. Records from a law enforcement sensitive system indicated the following:

a. On July 25, 2026, at approximately 7:39 p.m., the Subject UAS was operating in a NASA designated security area at Kennedy Space Center (KSC) in Merritt Island, FL.

b. The Subject UAS had flown for a total of 12 minutes 24 seconds with a max altitude of 70.30 meters/230.64 feet.

c. The Subject UAS (Attachment A-1) was within a physically defined area located at the NASA KSC where there were security measures, procedures, and restrictions.

12. The location of the Subject UAS flight by HE included R-2932 National Defense Airspace, which encompasses NASA's critical infrastructure. The flights took place within the following distances of the following NASA critical infrastructure: Space Launch Complex 39B, 1.56 miles to the south, and Rotation, Processing & Surge Facility, 4.23 miles to the southwest.

13. HE was accompanied by three family members. One of the family members informed KSC Police that they were visiting the United States on vacation and were flying the drone to capture the scenery during their vacation. HE stated he had recorded four videos utilizing the drone and asked if KSC Police wanted to see the videos. KSC Police viewed the videos. The first video was approximately one minute long and was documented as recording while the drone lifted off from the parking lot, rose above the tree line and captured video of Launch Complex 39A and 39B. As the drone gained altitude, it turned away from the Pad area and began a slow flight path north, capturing views of the ocean, Playalinda Beach and then the Lagoon. The remaining videos viewed were all under 40 seconds. These videos captured more views of the Lagoon, Playalinda Beach and North Kennedy Parkway. HE's family member stated they were not aware of the drone restrictions and offered

to delete the videos. KSC Police permitted the deletion of the videos by the family member.

14. HE told KSC Police he did not possess an operator certificate to operate the drone. HE advised he did have the DJI application on his phone, but that no videos had been downloaded from the drone to the application. Zhang stated they had arrived ten days prior and were departing the country on August 8, 2026 from LaGuardia International Airport in New York City. KSC Police seized the drone and the controller and HE was then issued a District Court Violation Notice (DCVN) for Operating a Drone over Critical Infrastructure Facility which he acknowledged by signing, and all four individuals were issued Trespass warnings and escorted off of KSC property.

15. Over the next several days, Agents confirmed with NASA and the FAA that there were no approved flights in the R-2932 National Defense Airspace for HE or the Subject UAS. Additionally, FAA records reflect no approved or submitted Federal Aviation Administration (FAA) DroneZone Authorizations or Waivers, nor did they have an approved Low Altitude Authorization and Notification Capability (LAANC) authorization, to conduct small Unmanned Aircraft System (sUAS) operations within Restricted Airspace R-2932 by HE or the Subject UAS.

16. FAA records indicated HE does not have a Part 107 pilot's license and the Subject UAS was not registered, either as a modelist or as a non-modelist.

17. According to a preliminary forensic review of the Subject UAS and its controller, performed pursuant to a federal search warrant, each time the Subject UAS was launched on July 25, 2026, a conspicuous warning was displayed in the on the Subject UAS's controller which stated the following: "Aircraft in Warning Zone (Airport). Fly with caution."

18. Because HE flew the Subject UAS in the R-2932 Airspace zone, without a Part 107 pilot's license, valid non-modelist registration, and no approval for flight in the R-2932 National Defense Airspace, he violated 49 U.S.C. § 46306(b)(7). Although all drones generally do not have to be registered for recreational use, this exception does not apply in restricted airspace. Part 107 and commercial use rules apply to any and all drones flown in restricted airspace, as applicable here.

19. Furthermore, because HE flew the Subject UAS without authorization in the R-2932 National Defense Airspace, he violated 49 U.S.C. § 46307 (Violation of National Defense Airspace).

CONCLUSION

20. WHEREFORE, I attest there is probable cause to arrest HE for violations of 49 U.S.C. § 46307 (violation of National Defense Airspace) and 49 U.S.C. § 46306(b)(7) (operating aircraft without an airman's certificate).

Respectfully submitted,

CMBeers

Christine Beers
Special Agent
NASA Office of Inspector General

Affidavit attested to me by as true and accurate by videoconference consistent with Fed. R. Crim. P. 4.1 and 41(d)(3), before me this 7th day of August 2026.

Leslie Hoffman Price

HON. LESLIE HOFFMAN PRICE
United States Magistrate Judge